In re Dennis Amiel CALVERT, Debtor.

BAY AREA FACTORS, A DIVISION OF DIMMITT & OWENS FINANCIAL, INC., Appellant,

v.

Dennis Amiel CALVERT, Appellee.

No. 96–5141.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 21, 1996.

Decided Jan. 28, 1997.

David M. Rudolph (argued and briefed), Martin, Tate, Morrow & Marston, Memphis, TN, for Appellant.

M. Hollis Williams (argued and briefed), Darrel L. Castle & Associates, Memphis, TN, for Appellee.

Before: KENNEDY, BOGGS and WOOD, Circuit Judges.*

KENNEDY, Circuit Judge.

Bay Area Factors, pursuant to 28 U.S.C. § 1292(b), appeals the District Court's order affirming the bankruptcy court's denial of its motion for summary judgment in this action to determine the dischargeability of a debt under 11 U.S.C. § 523(a). On appeal, we are asked to determine whether a default judgment obtained in state court, where the defendant did not defend the suit, has collateral estoppel effect against the debtor in a subsequent bankruptcy proceeding where the dischargeability of the debt is at issue. For the reasons that follow, we conclude that it does.

## I.

On December 11, 1991, Bay Area Factors ("BAF") filed a complaint against Dennis Amiel Calvert, and numerous other defendants, in the Municipal Court of the State of California located in Santa Clara County. In its complaint, BAF sought to recover against Calvert for, *inter alia*, intentional misrepresentation, fraud and deceit, and breach of fiduciary duty in connection with the sale of food products to Frontier Sales, Inc. Because Calvert failed to respond to the complaint, the California state court entered a default judgment, on March 11, 1992, against Calvert in the amount of $26,829.59. In an attempt to enforce the judgment in Tennessee, the default judgment was enrolled in the State of Tennessee on October 13, 1992, by order of the Shelby County, Tennessee Circuit Court for the Thirtieth Judicial District at Memphis. Calvert also failed to appear in or defend this action to enforce the California state court judgment.

On January 4, 1994, Calvert moved to join in his wife's Chapter Seven petition in bankruptcy proceedings pending in the United States Bankruptcy Court for the Western District of Tennessee. The motion was granted by the bankruptcy court on March 9, 1994. On June 20, 1994, BAF filed an adversary proceeding in the bankruptcy court against Calvert seeking a nondischargeable judgment [1] against Calvert for $26,829.59, the amount of the state court judgment. The bankruptcy court, on July 25, 1994, discharged Calvert from all dischargeable debts but reserved the question of the dischargeability of the debt owed to BAF. On September 27, 1994, BAF filed a motion for summary judgment arguing that, pursuant to the doctrine of collateral estoppel, the California state court judgment of default precluded Calvert from relitigating the issues of intentional misrepresentation, fraud and deceit, and breach of fiduciary duty in the bankruptcy proceedings.

On February 13, 1995, the bankruptcy court denied BAF's motion for summary judgment, refusing to apply the doctrine of collateral estoppel to the dischargeability issue in this bankruptcy proceeding. In the bankruptcy court's view, the prior default judgment did not satisfy the "actually litigated" requirement for application of the doctrine of collateral estoppel. Recognizing the split of authority among district and bankruptcy courts and noting that the question was, as yet, unresolved by this Court, the court elected to adopt an equitable approach in view of the fact that neither party entered any evidence into the record in the California state court proceedings and in light of the policy that bankruptcy proceedings allow a debtor an opportunity for a "fresh start."

On March 15, 1995, BAF moved for an interlocutory appeal to the District Court pursuant to 28 U.S.C. § 158(a). The United States District Court for the Western District of Tennessee granted BAF's motion for leave to file an interlocutory appeal and affirmed the bankruptcy court's decision denying BAF's motion for summary judgment. The District Court was persuaded that the policy reasons cited by the bankruptcy court warranted an exception to the doctrine of collateral estoppel in bankruptcy cases. The

---

* The Honorable Harlington Wood, Jr., Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. A debt is nondischargeable in bankruptcy when the debt is for property received by false pretenses, a false representation, actual fraud, fraud while acting in a fiduciary capacity, or willful and malicious injurious conduct of the debtor. 11 U.S.C. §§ 523(a)(2), (4), (6) (1993).

District Court, therefore, adopted the opinion and order of the bankruptcy court. However, it certified the case as appropriate for interlocutory appeal to this Court. A panel of this Court, on April 1, 1996, concluded that BAF met the criteria for interlocutory review under 28 U.S.C. § 1292(b) and granted leave to appeal.

## II.

The question we are asked to determine is whether a default judgment obtained in state court, where the defendant did not defend the suit, has collateral estoppel effect against the debtor in a subsequent bankruptcy proceeding where the dischargeability of the debt is at issue. Because this is a question of law, we review the District Court's conclusion *de novo.* *In re Bursack,* 65 F.3d 51, 53 (6th Cir.1995).

Our determination of the collateral estoppel effect of a state court default judgment in bankruptcy dischargeability proceedings begins with the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires the federal courts to give full faith and credit to the judicial proceedings of state courts. *See Migra v. Warren City Sch. Dist. Bd. of Ed.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889–90, 72 L.Ed.2d 262 (1982); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). Section 1738 of Title 28 of the United States Code provides, in pertinent part:

> The ... judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.

28 U.S.C. § 1738 (1994). As the United States Supreme Court has noted in the context of issue and claim preclusion:

> This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been

established that § 1738 does not allow federal courts to employ their own rules ... in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."

*Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985)(quoting *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982)).

■ In *Marrese,* the Supreme Court, in accordance with the Full Faith and Credit Statute, instructed lower federal courts faced with the question of whether to give full faith and credit to a state court default judgment to "consider first the law of the State in which the judgment was rendered to determine its preclusive effect." *Marrese* at 375, 105 S.Ct. at 1329. If the state court would not give preclusive effect to a default judgment, the analysis is complete. If, however, the state would accord the judgment preclusive effect, *Marrese* instructs that the federal court give preclusive effect to the judgment unless Congress has expressly or impliedly created an exception to § 1738 which ought to apply to the facts before the federal court. *Marrese* at 386, 105 S.Ct. at 1334–35.

■ Accordingly, this Court must first determine whether California law gives preclusive effect to default judgments. Instead of looking to California law to determine whether California would give a default judgment preclusive effect as *Marrese* instructs, the bankruptcy court applied the federal common law elements of collateral estoppel, as articulated by this Court in decisions issued before *Marrese,* and determined that the "actually litigated" prong of collateral estoppel was not satisfied.[2] In doing so, the bankruptcy court erred. Instead of analyzing whether the "actually litigated" element of collateral estoppel was satisfied, the bankruptcy court should have looked to California state law and then

---

2. As stated in *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981), in order to invoke collateral estoppel (1) the precise issue must have been raised in the prior proceeding, (2) the issue must

have been actually litigated, and (3) the determination of the issue must have been necessary to the outcome. *Id.* at 228.

**318**

determined whether an exception should apply.

■ California courts have held that collateral estoppel bars relitigation of an issue on which a party has obtained a default judgment. According to California law, "a party who permits a default to be entered confesses the truth of all the material allegations in the complaint. A default judgment is as conclusive upon the issues tended by the complaint as if rendered after an answer is filed and a trial is held on the allegations." *In re Naemi,* 128 B.R. 273, 278 (Bankr.S.D.Cal.1991)(citing *O'Brien v. Appling,* 133 Cal.App.2d 40, 42, 283 P.2d 289 (1955)). *See also In re Green,* 198 B.R. 564, 566 (9th Cir. BAP 1996); *Four Star Elec. Inc. v. F & H Constr.,* 7 Cal.App.4th 1375, 1380, 10 Cal.Rptr.2d 1 (1992); *Mitchell v. Jones,* 172 Cal.App.2d 580, 342 P.2d 503, 507 (1959).

Because the state in which the judgment was rendered would give the default judgment preclusive effect, *Marrese* instructs that the federal court must then determine whether an exception exists to § 1738. First, we note that in *Marrese* the Court held that the fact that a claim, such as the one in the case at hand, is within the exclusive jurisdiction of the federal courts does not suggest that an 'exception exists to § 1738.[3] *Marrese* at 380, 105 S.Ct. at 1331–32. In *Marrese,* the Court refused to create an exception where a party sought to give preclusive effect to a state court judgment in a federal antitrust claim, a claim over which the state court had no jurisdiction. *Id.* at 384, 105 S.Ct. at 1334. *See also Allen v. McCurry,* 449 U.S. 90, 97–99, 101 S.Ct. 411, 416–17, 66 L.Ed.2d 308 (1980) ("nothing in the language of § 1983 [or its legislative history] remotely expresses any congressional intent to contravene the ... rules of preclusion or to repeal the express statutory

requirements of the predecessor of 28 U.S.C. § 1738").

The Supreme Court has not spoken on the issue of whether a default judgment should be excepted from the application of § 1738 in bankruptcy discharge proceedings. The Court has decided a somewhat related issue in holding that the bankruptcy court may find a debt nondischargeable even though the debt has been reduced to a consent judgment in state court without any reference to fraud. *See Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In rejecting the debtor's argument in *Brown,* the Court concluded that it was giving res judicata effect to the judgment. The court pointed out that the creditor

> concedes that the prior decree is binding. That is the cornerstone of his claim. He does not assert a new ground for recovery nor does he attack the validity of the prior judgment. Rather, what he is attempting to meet here is the new defense of bankruptcy which respondent has interposed between petitioner and the sum determined to be due him.

*Brown v. Felsen,* 442 U.S. 127, 133, 99 S.Ct. 2205, 2210, 60 L.Ed.2d 767 (1979). In *Brown,* the creditor was permitted to add to the judgment a reason why it should not be discharged. In contrast, debtor here seeks to attack the validity of the prior judgment and avoid its applicability in the bankruptcy proceeding.

The Court has also held that generally "collateral estoppel principles ... apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991).[4] *Grogan,* however, did not decide the narrower question of whether collateral estoppel also applies to default judgments.

---

**3.** The issue of nondischargeability of a debt under §§ 532(a)(2), (4), and (6) is, as a matter of federal law, governed by the terms of the Bankruptcy Code and is within the exclusive jurisdiction of the bankruptcy courts. *See Brown v. Felsen,* 442 U.S. 127, 129–30, 136, 99 S.Ct. 2205, 2208–09, 60 L.Ed.2d 767 (1979).

**4.** *Grogan* clarified Supreme Court decisions only suggesting that collateral estoppel principles ap-

ply in bankruptcy proceedings. For example, in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205 (1979), the Court held that the doctrine of res judicata, or claim preclusion, does not apply to dischargeability proceedings in bankruptcy. The Court suggested that collateral estoppel, however, might bar relitigation of issues in bankruptcy

Prior to the Supreme Court's decision in *Grogan*, this Court, in *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981), faced the issue of whether collateral estoppel is available to preclude relitigation in dischargeability proceedings of issues already decided by a state court. *Spilman* held that collateral estoppel would apply. However, the Court noted in dicta:

> If the important issues were not actually litigated in the prior proceeding, *as is the case with a default judgment*, then collateral estoppel does not bar relitigation in the bankruptcy court.

*Id.* at 228 (emphasis added). This Court is not bound by this language in *Spilman* for two reasons. First, the precise issue of the collateral estoppel effect of default judgments was not before the Court in *Spilman*. In *Spilman*, an Ohio state court awarded plaintiff $207,748.95 for personal injuries caused by the defendant's intoxicated driving but the state court found that defendant did not act willfully or wantonly. Subsequent to the judgment, the debtor filed bankruptcy and the defendant in the state court suit sought to have the debt deemed dischargeable relying on the doctrine of collateral estoppel.[5] *Id.* at 225. Although the record was unclear regarding the basis upon which the state court made the finding of the absence of willful or wanton misconduct, it was clear that a default judgment was not at issue in *Spilman*.

Second, *Spilman* was decided before the Supreme Court in *Marrese* instructed federal courts to use the preclusion principles of the state where the judgment was entered and not to employ their own rules of preclusion. Without the benefit of direction from the Supreme Court, the Court in *Spilman* applied principles of collateral estoppel as articulated by federal courts instead of looking to whether Ohio would have given preclusive effect to the state court judgment. *Id.* at 227. Thus, without regard to whether the State of Ohio would give preclusive effect to a default judgment in bankruptcy proceedings, the Court assumed that a default judgment would not have preclusive effect be-

cause the issues in the suit resulting in the default judgment would not have been actually litigated.

The bankruptcy court below suggested that this Court, in *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986), reaffirmed the mode of analysis in *Spilman* despite the Supreme Court's pronouncements in *Marrese*. In *Wheeler*, the plaintiff obtained a jury verdict against the defendant for libel in a Michigan state court. *Id.* at 611. When defendant filed for bankruptcy, the bankruptcy court granted plaintiff's motion for summary judgment on the issue of dischargeability of the debt owed by the defendant because it found that the libel verdict conclusively established that the defendant acted wilfully and maliciously, creating a debt which is not dischargeable in bankruptcy. *Id.* at 614. Without looking to what preclusive effect a Michigan court would give the jury verdict, this Court remanded the case to the bankruptcy court to review the entire record to determine whether the issue of wilfulness and malice was actually litigated and necessary to the verdict. *Id.* at 615–16.

Recognizing the approach taken in *Spilman* and the subsequent Supreme Court decisions on the subject, our Court in *In re Bursack*, 65 F.3d 51 (6th Cir.1995), recognized that "the Supreme Court's opinions in cases such as *Migra* and *Marrese* call into question the rigid rule set out by *Spilman*." *Id.* at 54. However, *Bursack* left open the question of whether the statement regarding default judgments in *Spilman* had been overruled because *Bursack* did not involve a true default judgment. *Id.* In *Bursack*, the plaintiff filed a state court suit in Tennessee against several defendants, including Bursack, alleging that the defendants made false representations and submitted false financial statements upon which the plaintiff relied in loaning money to the defendants. Bursack answered the complaint and was deposed but failed to appear for trial. The trial took place without Bursack and plaintiff obtained a judgment against all of the defendants. *Id.* at 52. After Bursack filed bankruptcy, the plaintiff, who obtained the state court judg-

---

dischargeability proceedings. *Id.* at 139 n. 10, 99 S.Ct. at 2213 n. 10.

**5.** Debts incurred by causing wanton, wilful injury to another's person or property are nondis-

chargeable in bankruptcy. *See* 11 U.S.C. § 523(a)(6).

ment, sought to invoke collateral estoppel to preclude Bursack from litigating the issue of whether his debt to the plaintiff was based on fraud and therefore not dischargeable.

Following the dictates of *Marrese*, the *Bursack* Court, unlike the Court in *Spilman* and *Wheeler*, looked to Tennessee law to determine whether, despite Bursack's failure to appear at trial, the state court judgment would have preclusive effect in the bankruptcy proceedings. Because default judgments in Tennessee have preclusive effect, the Court concluded that Tennessee would allow the use of collateral estoppel under the facts in *Bursack*. *Bursack* then noted that "[w]hether or not any federal policy requires an exception to the normal operation of § 1738 in the case of a true default judgment, no provision of federal law requires an exception in circumstances such as those present here" where the debtor "retained an attorney, filed an answer, asserted cross-claims, and participated in discovery." *Id.* at 54–55. Thus, the Sixth Circuit has not yet faced a case involving a true default judgment such as in the case at hand.

Because California gives preclusive effect to default judgments, we must determine, as a matter of first impression, whether an exception exists that would exempt a default judgment from the application of § 1738 in bankruptcy dischargeability proceedings. To determine whether an exception exists, the Supreme Court instructs, "[r]esolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. Our previous decisions indicate that the primary consideration must be the intent of Congress." *Marrese* at 386, 105 S.Ct. at 1335.

The United States Court of Appeals for the Ninth Circuit recently addressed the precise issue before this Court. In *In re Nourbakhsh*, 67 F.3d 798 (9th Cir.1995), the plaintiff filed suit in Florida state court against Nourbakhsh alleging fraud. Nourbakhsh did not defend the action. Consequently, the court entered a default judgment.[6] When Nourbakhsh filed bankruptcy, the plaintiff

attempted to invoke collateral estoppel to declare the debt nondischargeable; the bankruptcy court agreed that collateral estoppel should apply. *Id.* at 800. After the Ninth Circuit determined that Florida law would give preclusive effect to a default judgment, the court rejected, without significant analysis, the debtor's argument that Congress intended to except § 523 from the requirements of the Full Faith and Credit Statute. *Id.* at 801.

Numerous bankruptcy courts have faced the issue of whether an exception to § 1738 exists in the case of a default judgment and the results have differed. Two of the more extensively reasoned opinions with opposing holdings are *In re Byard*, 47 B.R. 700 (Bankr.M.D.Tenn.1985), and *In re Hall*, 95 B.R. 553 (Bankr.E.D.Tenn.1989). In *In re Byard*, the court held that there was nothing expressed in either the Bankruptcy Code or in the Congressional statements and no compelling statement of federal bankruptcy law that Congress intended default judgments to be immune from preclusion in dischargeability proceedings. The court further noted that *Brown v. Felsen* only exempted claim preclusion from the operation of § 1738, not issue preclusion, and that the implied exclusion of claim preclusion from § 1738 has been only narrowly construed by the Supreme Court in cases such as *Kremer*. Indeed, the Supreme Court has specifically stated that issue preclusion does apply in dischargeability proceedings. *See Grogan, supra.* Considering whether any strong bankruptcy policy prohibited application of § 1738, *In re Byard* found none. Rather, the court acknowledged that, "[f]raud, conversion and misapplication of funds are issues well within the regular competence and experience of state courts." *In re Byard* at 707.

This Court's review of the Bankruptcy Code and the extensive amount of legislative history of the Code confirms the court's conclusion in *In re Byard* that neither reveal anything that would suggest that Congress intended to exclude default judgments obtained in state court from the applicability of the Full Faith and Credit Statute in dis-

---

**6.** The state court did, however, include a specific finding of fraud in the judgment. The state court

did not make any specific findings in the judgment in the case at hand.

chargeability proceedings in bankruptcy court.

In contrast, the bankruptcy court in *In re Hall* concluded that the reasoning used by *Brown v. Felsen* to except res judicata from § 1738 applies equally to collateral estoppel. But as we have noted, *Brown* gave effect to the state court judgment. That judgment simply had not raised the issue of fraud. The judgment here did.

*Brown* forbade the application of res judicata in bankruptcy dischargeability proceedings on behalf of the debtor in part because the Court was of the view that allowing a debtor in a dischargeability proceeding in bankruptcy court to employ res judicata would force creditors to try dischargeability issues in state court "to the hilt" in the event that the debtor might some day file bankruptcy. In the context of collateral estoppel, the *In re Hall* court was persuaded by the argument that a defendant who is sued in state court will be forced to

> defend the suit to the hilt in the state court in order to preserve the dischargeability of the debt even though no bankruptcy case is pending and there may never be a bankruptcy case. Otherwise, the creditor can make the debt nondischargeable simply by obtaining a default judgment which recites that it is based on fraud, false pretenses, embezzlement, larceny, or some other ground of nondischargeability. An individual could not forego defending a state court lawsuit and still have the right to a determination of the dischargeability by the appropriate court if or when he files bankruptcy.

*In re Hall* at 556. This reasoning in *In re Hall* is unconvincing. Unlike the valid argument presented in *Brown*, this argument presumes that we do not have a system of law which expects, and in fact demands, that individuals sued respond to the suit and which subjects to liability those who do not. Thus, this reason for not applying res judicata to the discharge of debts created through fraud does not apply equally to collateral estoppel.

The court in *In re Hall* was also concerned with the "problem of premature litigation of dischargeability issues." *Id.* at 556. Specifically, the court was concerned that the defen-

dant would be forced to litigate "in state court not to disprove the plaintiff's claim on the merits but specifically to preserve the question of dischargeability in bankruptcy." *Id.* at 557. Requiring the debtor to do this, the court said, would be contrary to the policy of bankruptcy laws which favors litigation of discharge issues in bankruptcy courts. *Id.* We find this argument unpersuasive. The debtor is required to litigate the fraud issue when he litigates other issues in state court or he will be bound by the judgment despite the policy. Nor does this result add to litigation in the state court. The fraud issue is already there. The issues in state court fraud suits and bankruptcy court discharge proceedings are frequently the same; the debtor is not forced to litigate any claim or any issue that he would not otherwise have to in state court simply for fear that he might file bankruptcy one day and seek to have debts declared dischargeable.

There are additional considerations, not raised by *In re Nourbakhsh, In re Byard,* or *In re Hall,* which lead us to the conclusion that a creditor may utilize collateral estoppel to prevent litigation of the dischargeability of a debt after obtaining a default judgment on claims of fraud in state court. First, it is already accepted by our Court that, when the defendant in the state court suit has defended the suit, at least in part, collateral estoppel will apply. *See In re Bursack, supra.* If this Court were to hold that where the defendant does nothing to defend the suit collateral estoppel will not apply, an unacceptable incentive may result. A defendant contemplating bankruptcy may permit a default judgment to be entered to avoid a jury determination of fraud damages, or in hopes that, by postponing the time when the fraud issue will be tried, memories may fade and evidence may become unavailable.

Second, there is the possibility that a defendant who has had a default judgment entered against him and who later files bankruptcy may not have had the incentive to fully litigate his case because he was unable to pay a judgment. This concern, however, applies whether the defendant defends a suit in part or not at all. In both scenarios, there is the potential that a defendant with limited financial resources will not fully defend a

state court action because he is judgment-proof. Thus, this concern does not avail this Court of a sensible way to distinguish between a case where the defendant does not respond at all to a state court suit and where the defendant only participates in defending part of the suit. There is, therefore, no basis to distinguish between *In re Bursack* and the case at hand.

In the absence of any indication in the Bankruptcy Code or legislative history suggesting that Congress intended an exception to § 1738 apply to true default judgments and with no principled distinction between cases where a defendant participates in part in defense of the state court suit and cases where the defendant does not respond at all, we conclude that collateral estoppel applies to true default judgments in bankruptcy dischargeability proceedings in those states which would give such judgments that effect.

### III.

For the foregoing reasons, the judgment of the District Court is **REVERSED** and the case is **REMANDED** to the District Court to conduct proceedings consistent with this opinion.